# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IRON RANGE CAPITAL PARTNERS, LLC, | ) ) ) | Case No. 1:14-cv-01339 |
| Plaintiff, | ) ) | Hon. Judge John W. Darrah |
| v. | ) ) ) | |
| OSPREY CAPITAL, LLC, DAVID H. HOFFMANN, and GREGORY D. HOFFMANN, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS ALL COUNTS OF PLAINTIFF'S COMPLAINT**

Edward F. Ruberry
Alexander R. Hess
RUBERRY, STALMACK & GARVEY, LLC
500 West Madison, Suite 2300
Chicago, Illinois 60661
Phone: (312) 466-8050
Fax: (312) 488-8055
ed.ruberry@rsg-law.com
alex.hess@rsg-law.com

*Attorneys for Defendants*

April 28, 2014

## INTRODUCTION

Iron Range Capital Partners, LLC ("Iron Range") alleges in its Complaint against Osprey Capital, LLC ("Osprey"), David H. Hoffmann, and Gregory D. Hoffmann (collectively, "Defendants") that it is entitled to relief under seven counts. (Dkt. 1) But Iron Range fails to state a claim on which relief can be granted in any of those counts. Although Iron Range asserts claims under both federal and Illinois securities laws, those laws have no application here because no securities transaction occurred. Iron Range further asserts that it is entitled to compensation for facilitating Defendants' acquisition of a business, even though the Illinois Business Broker Act of 1995 (the "IBBA") invalidates the contracts at issue and bars Iron Range from receiving compensation for acting as a Business Broker, as it did here. Moreover, Iron Range's tort theories of damages are inconsistent with the very contracts between it and Osprey that it seeks to enforce. Accordingly, Defendants respectfully request, pursuant to FED. R. CIV. P. 12(b)(6), that the Court enter an order granting this Motion and dismissing all counts of the Complaint with prejudice.

## SUMMARY OF ALLEGATIONS

On June 24, 2013, Iron Range and Osprey executed the "Non-Circumvention Agreement" (the "NCA"). (Dkt. 1 at ¶ 16) The NCA provided that: (a) Iron Range had advised Osprey that it was pursuing the acquisition of an undisclosed corporation; (b) Iron Range would disclose the identity of the corporation to Osprey upon the execution of the NCA; (c) Osprey would not pursue the acquisition without Iron Range's cooperation and authorization; (d) all communications from Osprey regarding the proposed acquisition, requests for information, and discussions regarding procedures, would be directed to Iron Range; (e) the NCA would remain in effect until the closing; (f) the NCA was the full, complete, and final expression of the parties' understanding; and (g) the parties could change the NCA only by an amendment signed by both parties. (*Id.* at ¶ 17)

1

Over the following four days, Iron Range and Osprey negotiated the terms of the "Joint Ownership Agreement" (the "JOA") in the event that Osprey acquired the corporation in question, Orange Line Holdings, Inc. ("Orange Line"). (Dkt.1 at ¶ 19) Gary Stark of Iron Range sent an email to David Hoffmann on June 28, 2013, outlining Mr. Stark's understanding of the key provisions of the JOA. (*Id.* at ¶ 20) The JOA provided that Iron Range would receive: (a) $150,000 in cash at the closing on the acquisition of Orange Line; (b) $62,500 per year for Mr. Stark's involvement in managing Orange Line; (c) 5% of Osprey's invested capital in Orange Line; (d) at least one seat on Orange Line's board of directors; and (e) further compensation in connection with certain add-on acquisitions. (*Id.* at ¶ 21)

During the ensuing weeks, Iron Range worked to "help Osprey complete its own due diligence and facilitate the closing on the acquisition of Orange Line," for which "Osprey was prepared to provide capital." (Dkt. 1 at ¶¶ 23-24)

Iron Range negotiated a letter of intent with Orange Line, dated July 19, 2013, that outlined the terms and conditions for *Iron Range's* acquisition of Orange Line ("July LOI"). (Dkt.1 at ¶ 25) After Iron Range sent the July LOI to Osprey, David Hoffmann asked Mr. Stark to negotiate a new letter of intent providing for *Osprey's* acquisition of Orange Line under the same terms and conditions. (*Id.* at ¶ 26) Accordingly, Mr. Stark obtained a replacement letter of intent from Orange Line, dated July 22, 2013, that outlined the terms and conditions for Osprey's potential acquisition of Orange Line ("Osprey LOI"). (*Id.* at ¶ 29). Further, in a July 22, 2013 email to Orange Line, Mr. Stark declared the July LOI null and void. (*Id.* at ¶ 30)

On or about October 21, 2013, Osprey closed on the acquisition of Orange Line. (Dkt. 1 at ¶ 46) Osprey did not provide Iron Range with any consideration under the JOA. (*Id.* at ¶ 47)

2

Iron Range allegedly procured the Osprey LOI in reliance on Defendants' purported misrepresentations that the letter of intent had to specify that *Osprey* intended to acquire Orange Line in order for Osprey to obtain bank financing (the "Bank Representation"), and that Osprey would honor the terms of the JOA (the "Payment Representation"). (*Id.* at ¶¶ 27-29, 31-32) Iron Range further alleges that Defendants excluded Iron Range from the acquisition of Orange Line immediately after receiving the Osprey LOI. (*Id.* at ¶ 34). Iron Range alleges that Defendants' false representations and subsequent exclusion of Iron Range from the transaction constituted a "Scheme to Defraud." (*Id.* at ¶ 36)

In Count I, Iron Range requests relief under Section 10(b) of the Securities Exchange Act ("Section 10(b)") and SEC Rule 10b-5 ("Rule 10b-5"). In Count II, Iron Range requests relief under the Section 12 of the Illinois Securities Law of 1953 ("Section 12"). In Count III, Iron Range requests relief for common law fraud. In Count IV, Iron Range requests relief for breach of the NCA. In Count V, Iron Range requests relief for breach of the JOA. In Count VI, Iron Range requests relief for unjust enrichment. In Count VII, Iron Range requests relief for tortious interference with prospective economic advantage.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint containing fraud allegations is subject to a heightened pleading standard. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing FED. R. CIV. P. 9(b)). Such a complaint

must include specific allegations of "who, what, where, when, where, and how." *Id.* This heightened standard applies to "fraudulent torts" and any counts "premised upon a course of fraudulent conduct." *Id.*

In deciding Rule 12(b)(6) motions, "courts are free to examine … 'matters of which a court may take judicial notice.'" *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 770 (N.D. Ill. 2011). Courts may take judicial notice of a matter that is "'not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* at 771. In accordance with that principle, courts may consider matters of public record "'to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard.'" *Id.* Corporate registration information obtained from the Illinois Secretary of State is a matter of public record of which courts may take judicial notice. *Lengerich v. Columbia Coll.*, 633 F. Supp. 2d 599, 607 n.2 (N.D. Ill. 2009).

Exhibit A to this Memorandum is a signed and sealed certification of the Illinois Secretary of State irrefutably establishing that neither Iron Range nor Mr. Stark has ever been registered under Section 10-10 of the IBBA.[1] Exhibit A is a matter of public record of which the Court may take judicial notice in deciding this Motion.

**ARGUMENT**

**I.      Count I – Violation of the Securities Exchange Act of 1934**

Iron Range has failed to state a claim that Defendants violated Section 10(b) or Rule 10b-5. Section 10(b) provides that "[i]t shall be unlawful for any person … [t]o use or employ, in

---

[1] This information is readily accessible on the Illinois Secretary of State's website at http://www.ilsos.gov/brokersearch/.

4

connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C.S. § 78j (2013). Pursuant to Section 10(b), the SEC adopted Rule 10b-5, which states that "[i]t shall be unlawful for any person … [t]o employ an device, scheme, or artifice to defraud … or … [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." SEC Rule, 17 C.F.R. § 240.10b-5 (2014).

There are clear limitations on the application of Section 10(b) and Rule 10b-5. Parties "may recover under [Section 10(b) and Rule 10b-5] only if the deceit caused them to purchase or sell securities." *Anderson v. Aon Corp.*, 614 F.3d 361, 363 (7th Cir. 2010). "[T]he relevant inquiry is whether plaintiffs were denied information that would or might have been useful to them in deciding whether to purchase or sell securities which they *actually did purchase or sell*." *Rabin v. JPMorgan Chase Bank, N.A.*, No. 06-5452, 2007 U.S. Dist. LEXIS 57437, *11 (N.D. Ill. Aug. 3, 2007) (quoting *O'Brien v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 593 F.2d 54, 60 (7th Cir. 1979)) (emphasis added). Moreover, an alleged misrepresentation is actionable under Section 10(b) and Rule 10b-5 only if the misrepresentation relates to the value of a security. *Gavin v. AT&T Corp.*, 464 F.3d 634, 639 (7th Cir. 2006); *Gurwara v. Lymphomed, Inc.*, 937 F.2d 380, 383 (7th Cir. 1991); *Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984).

Iron Range alleges that Defendants misrepresented their intention to perform their obligations under the NCA and the JOA. (Dkt. 1 at ¶¶ 52, 55) Iron Range further alleges that, under the JOA, a five percent interest in Osprey's invested capital in Orange Line was to be issued to Iron Range after the closing. (*Id.* at ¶ 51). Those allegations are inadequate because Iron Range does not aver that Defendants' alleged misrepresentations actually induced it to purchase a five

5

percent interest in Orange Line. On the contrary, Iron Range specifically alleges that it did not receive any securities to which it was allegedly entitled under the JOA. (*Id.* at ¶ 47) Because Iron Range has not alleged that it actually purchased (or sold) any securities, it cannot state a claim under Section 10(b) or Rule 10b-5. Furthermore, Iron Range has stated no such claim because it does not aver that Defendants made any misrepresentations related to the value of the five percent interest in Orange Line that allegedly was to be issued to Iron Range under the JOA. For this alternative reason, Iron Range has failed to state a claim on which relief can be granted under Section 10(b) or Rule 10b-5.

## II.     Count II – Violation of Section 12 of the Illinois Securities Law of 1953

Iron Range has likewise failed to state a claim under Section 12. Section 12 provides that "[i]t shall be a violation … for any person … [t]o engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof … [or] … [t]o employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security." 815 ILL. COMP. STAT. 5/12 (2014). This language mirrors the language of Rule 10b-5 quoted above. Generally, "the Illinois Securities Law is 'substantially similar' to the federal securities laws and so Illinois courts interpret the statute with an eye towards federal law." *Goldberg v. 401 N. Wabash Venture LLC*, 904 F. Supp. 2d 820, 849 (N.D. Ill. 2012). That is, Section 12 is "substantially similar" to Rule 10b-5, so courts interpret the two provisions in the same way. *See, e.g., Hidell v. Int'l Diversified Invs.*, 520 F.2d 529, 536 n.14 (7th Cir. 1975); *Morlock v. Shepherd*, No. 99-0637, 1999 U.S. Dist. LEXIS 19402, *16-18 (N.D. Ill. Dec. 16, 1999) (noting that Section 12 is patterned after Section 10(b) and Rule 10b-5, and dismissing plaintiff's Section 10(b) and Rule 10b-5 claims and Section 12 claim on the same grounds).

6

Counts I and II rest on the same allegations. (Dkt. 1 at ¶ 59) Because Iron Range has not alleged fraud in connection with an actual securities transaction or that Defendants misrepresented the value of securities, Iron Range has failed to state a claim in Count I on which relief can be granted under Rule 10b-5. Thus, Iron Range has also failed to state a claim in Count II.

Moreover, Iron Range has failed to state a claim in under Section 12 because the five percent interest in Orange Line that allegedly was to be issued to Iron Range does not constitute a "security" under the Illinois Securities Law. That statute defines "security" as "any note, stock, treasury stock, … or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." 815 ILL. COMP. STAT. 5/2.1 (2014). Illinois courts have elaborated on this definition, holding "that a security within the meaning of the securities laws is a contract, transaction or scheme whereby one person invests his money in a common enterprise on the theory that he expects to receive profits *solely from the efforts of others*." *Doherty v. Kahn*, 682 N.E.2d 163, 169-70 (Ill. App. Ct. 1997) (emphasis added). Conversely, a "sale of stock to a buyer … who [shares] in the control and management of the corporation ... is not a sale of securities." *Id.* at 170.

Iron Range alleges that the JOA provided for it to receive not only a five percent interest in Orange Line, but also at least one seat on Orange Line's board of directors and an annual fee of $62,500 for participating in Orange Line's management. (Dkt. 1 at ¶ 21) According to these allegations, the JOA described the terms of a transfer of stock to a party that would share in the control and management of the corporation, so the JOA did not memorialize an agreement for a sale of securities. Thus, even if case law interpreting Rule 10b-5 did not warrant dismissal of Count II—and it does—Iron Range would still have no viable claim under Section 12.

7

### III. Count III – Fraud

Iron Range has failed to state a claim for fraud. Under Illinois law, a party claiming fraud must allege, with particularity, each of six elements: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 905 (Ill. 1996).

Iron Range alleges that Defendants committed fraud though their purported Scheme to Defraud. (Dkt. 1 at ¶ 62) According to the Complaint, Iron Range procured the Osprey LOI in reliance on the Banking Representation and the Payment Representation, the two statements on which the Scheme to Defraud hinged. (*Id.* at ¶ 29) Iron Range alleges that its injury was its loss of the consideration that Defendants' purportedly owed it under the JOA. (*Id.* at ¶ 47) But Iron Range does not allege with particularity how its reliance led to its injury. Indeed, Iron Range's procuring the Osprey LOI, in replacement of the July LOI, could not have led to its injury.

Iron Range alleges that the July LOI "outlined the terms and conditions for the acquisition of 100% of the outstanding capital stock of Orange Line by Iron Range." (*Id.* at ¶ 25) If that allegation were true, then the terms of the July LOI would conflict with the terms of the NCA and the JOA, under which *Osprey* was to acquire Orange Line, with Iron Range facilitating the transaction. (*Id.* at ¶¶ 23-24) Furthermore, the JOA provided that Iron Range was to be issued only *5% of Osprey's* invested capital in Orange Line. (*Id.* at Ex. B) Because the July LOI conflicted with the JOA, Iron Range could not have both performed under the July LOI and received consideration under the JOA. Thus, Iron Range cannot allege that procuring the Osprey LOI, in

8

replacement of the July LOI, led to its injury. For this reason, Iron Range has not and cannot state a claim for fraud.

Moreover, Iron Range does not and cannot allege that it had a right to rely on the Payment Representation that Osprey would honor the terms of the JOA. According to the Complaint, Iron Range procured the Osprey LOI in reliance on the Payment Representation. (Dkt. 1 at ¶ 29) But Iron Range had no right, as a matter of law, to rely on the Payment Representation.

A fraud claim fails "when no trier of fact could find that it was reasonable [for the plaintiff] to rely on the alleged statements." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). No trier of fact could find that it was reasonable for Iron Range to rely on the Payment Representation, as the JOA and the NCA are void under the IBBA. 815 ILL. COMP. STAT. 307/10-1 *et seq.* The IBBA defines "Business Broker" as "any person who … in return for … compensation … assists any person in procuring a business from any third person." 815 ILL. COMP. STAT. 307/10-5.10. A "Business" is "an existing business, goodwill of an existing business, or any interest therein." 815 ILL. COMP. STAT. 307/10-5.15. A "Person" is "an individual, a corporation, a partnership, an association, a joint stock company, a limited liability company, a limited liability partnership, a trust, any unincorporated organization, or any other entity." 815 ILL. COMP. STAT. 307/10-5.20. The IBBA applies "when the person seeking to engage the Business Broker is domiciled in [Illinois]." 815 ILL. COMP. STAT. 307/10-105.

According to the Complaint, Iron Range is a limited liability company that, in return for compensation, promised to assist Osprey, another limited liability company, in procuring Orange Line, an existing business, from its shareholders. (Dkt. 1 at ¶¶ 6, 7, 10, 15-21) Iron Range alleges that it worked to "help Osprey complete its own due diligence and facilitate the closing on the acquisition of Orange Line," for which "Osprey was prepared to provide capital." (*Id.* at ¶¶ 23-24)

9

Furthermore, Osprey, which is domiciled in Illinois, sought to engage Iron Range to assist in procuring Orange Line. (*Id.* at ¶¶ 7, 16-21) Thus, Iron Range acted as a "Business Broker," and the IBBA governed the business relationship between Iron Range and Osprey with respect to Osprey's acquisition of Orange Line.

The IBBA requires that "[e]very person engaging in the business of Business brokering shall be registered with the Office of the Secretary of State." 815 ILL. COMP. STAT. 307/10-10. If a Business Broker fails to comply with that requirement "in connection with a contract for Business brokering services, the contract is void, and the prospective client is entitled to receive from the Business Broker all sums paid to the Business Broker." 815 ILL. COMP. STAT. 307/10-60. The IBBA further provides that "[a] Business Broker shall not … [e]ngage in the business of acting as a Business Broker without registration under this Act." 815 ILL. COMP. STAT. 307/10-85. In addition, a contract for Business brokering service is void if it is not "in writing and signed by all contracting parties." 815 ILL. COMP. STAT. 307/10-35.

On these points, *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738 (Ill. App. Ct. 2013), is instructive. In *Sheth*, the plaintiffs alleged that a corporation had informed them that it wished to sell one of its divisions. *Id.* at 749. The plaintiffs further alleged that they had informed the defendants of the acquisition opportunity and that the defendants had authorized them to proceed with negotiations. *Id.* at 750. The defendants then acquired the division but refused to pay the plaintiffs a commission. *Id.* The trial court dismissed the plaintiffs' claim based on the defendants' refusal to pay because the plaintiffs had not complied with the IBBA requirement that all Business brokering contracts be in writing. *Id.* at 749. The appellate court affirmed, holding that the plaintiffs had acted as a Business Broker under the IBBA because they had assisted the defendants in procuring a business. *Id.* at 751.

10

Both the NCA and the JOA are contracts for Iron Range's Business brokering services. (Dkt. 1 at ¶¶ 16-21) But neither Iron Range nor Mr. Stark has ever been registered as a Business Broker with the Secretary of State. (*See* Ex. A) Moreover, the parties did not sign the JOA. (Dkt. 1 at Ex. B) Under these circumstances, the IBBA barred Iron Range from acting as a Business Broker, both the NCA and the JOA are void, and Iron Range cannot allege that it had a right to rely on the Payment Representation. For this additional reason, Iron Range has failed to state a claim for fraud.

### IV.     Count IV – Breach of the NCA

Iron Range has also failed to state a claim for breach of the NCA. Under Illinois law, "[t]he essential elements of a breach of contract claim are as follows: (i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) resultant injury to the plaintiff." *Coghlan v. Beck*, 984 N.E.2d 132, 143 (Ill. App. Ct. 2013). As discussed above, the NCA is invalid under the IBBA because it is a contract for Iron Range's Business brokering services, and neither Iron Range nor Mr. Stark has ever been registered as a Business Broker with the Secretary of State. (*See* Ex. A) Because the NCA is not a valid and enforceable contract, Iron Range cannot satisfy the first element of a breach of contract claim. Accordingly, Count IV must be dismissed.

### V.     Count V – Breach of the JOA

Likewise, Iron Range has failed to state a claim for breach of the JOA. Again, one of the essential elements of a breach of contract claim is "the existence of a valid and enforceable contract." *Coghlan*, 984 N.E.2d at 143. The JOA is invalid under the IBBA because it is a contract for the Business brokering services of Iron Range, and neither Iron Range nor Mr. Stark has ever

been registered as a Business Broker with the Secretary of State. (*See* Ex. A) The JOA is also invalid under the IBBA because the parties did not sign it. (Dkt. 1at Ex. B)

Even if the IBBA did not invalidate the JOA—and it plainly does—the contract would still be unenforceable. A contract is not valid and enforceable under Illinois law unless "the promises and performances to be rendered by each party are reasonably certain." *Academy Chi. Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991). The JOA specifies the performance Osprey was to render, but it does not specify the performance Iron Range was to render in exchange. Because Iron Range's obligations are not reasonably certain, the JOA is not a valid and enforceable contract. Thus, Iron Range cannot satisfy the first element of a breach of contract claim, and Count V must be dismissed.

## VI. Count VI – Unjust Enrichment

Iron Range has also failed to state a claim for unjust enrichment. Iron Range's claim for unjust enrichment is premised upon an alleged course of fraudulent conduct. (Dkt. 1 at ¶ 74) Accordingly, the claim must include specific allegations of "who, what, where, when, where, and how" with respect to each element. *Borsellino*, 477 F.3d at 507. A plaintiff asserting a claim for unjust enrichment under Illinois law "must allege that the defendant retained a benefit to the plaintiff's detriment, and that the retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 978 (N.D. Ill. 2008). A plaintiff cannot recover damages for unjust enrichment unless it can "show that [the] defendant voluntarily accepted a benefit which would be inequitable for [the defendant] to retain without payment." *People v. Hartigan*, 607 N.E.2d 165, 177 (Ill. 1992).

Iron Range's allegations are insufficient under this standard. Again, if a Business Broker fails to register with the Secretary of State, it may not enter a contract for Business brokering

services or receive any compensation for Business brokering services. 815 ILL. COMP. STAT. 307/10-60, 10-85. As neither Iron Range nor Mr. Stark has ever been registered as a Business Broker with the Secretary of State (*See* Ex. A), Iron Range has no right, as a matter of law, to receive any compensation in exchange for any services it rendered in brokering Osprey's acquisition of Orange Line. Accordingly, it could not be inequitable for Defendants to retain a benefit, without payment, to which Iron Range was not entitled.

Iron Range alleges that Defendants "unjustly induced [it] to forfeit its rights under the July LOI." (Dkt. 1 at ¶ 74) That is a red herring. Iron Range alleges that the July LOI, dated July 19, 2013, "outlined the terms and conditions for the acquisition of 100% of the outstanding capital stock of Orange Line by Iron Range." (*Id.* at ¶ 25) Again, if that allegation were true, then the terms of the July LOI would conflict with the terms of the NCA and the JOA, under which *Osprey* was to acquire Orange Line, with Iron Range facilitating the transaction. (*Id.* at ¶¶ 23-24) Furthermore, the JOA, which Mr. Stark emailed to David Hoffmann on June 28, 2013, provided that Iron Range was to be issued only *5% of Osprey's* invested capital in Orange Line. (*Id.* at Ex. B) It is contradictory for Iron Range, on the one hand, to seek to enforce contracts giving Osprey the right to acquire Orange Line and, on the other hand, to allege that Osprey unjustly deprived it of the right, under a later contract, to acquire Orange Line itself. Iron Range's allegation that it would be inequitable for Defendants to retain the full benefit of Osprey's acquisition of Orange Line cannot stand.

Moreover, even if it would be inequitable for Defendants to retain the full benefit of Osprey's acquisition of Orange Line—and it would not be—Iron Range has failed to state a claim for unjust enrichment. Under Illinois law, where a specific contract governs the relationship of the parties, the doctrine of unjust enrichment does not apply. *La Throp v. Bell Fed Sav. & Loan Assoc.*,

370 N.E.2d 188, 195 (Ill. 1977); *see also Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) ("[A] claim for unjust enrichment … is unavailable where the claim rests on the breach of an express contract."). Whether a claim rests on a breach of contract depends on "the subject matter of the contract" rather than the contract's specific "terms and provisions." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004).

Iron Range alleges that the NCA and the JOA governed its relationship with Defendants. (Dkt. 1 at ¶¶ 16-22) The subject matter of those agreements was Osprey's acquisition of Orange Line, the transaction through which Iron Range claims that Defendants obtained an inequitable benefit. (*Id.* at ¶ 75) Even if those agreements were valid—and they are not—Defendants did not owe any obligation to Iron Range outside of them. "The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract." *Horace Mann*, 383 F.3d at 689. In short, Iron Range seeks to recover outside the alleged contracts through its unjust enrichment claim, but Illinois law does not allow it to do so.

Iron Range attempts to circumvent this obstacle by pleading Count VI in the alternative. But that attempt is futile, in part because Count VI expressly incorporates the allegations related to the Non-Circumvention Agreement and the Joint Ownership Agreement. (*Id.* at ¶71) For this additional reason, Iron Range has failed to state a claim for unjust enrichment.

**VII. <u>Count VII – Tortious Interference with Prospective Economic Advantage</u>**

Iron Range has also failed to state a claim for tortious interference with prospective economic advantage. Iron Range's claim is premised upon an alleged course of fraudulent conduct. (Dkt. 1 at ¶¶ 81-82) Accordingly, it must rest on specific allegations of "who, what, where, when, where, and how" with respect to each element. *Borsellino*, 477 F.3d at 507.

Under Illinois law, a plaintiff asserting a claim for tortious interference with prospective economic advantage must allege four elements: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Dorpel*, 667 N.E.2d 1296, 1299 (1996). With respect to the first element, Iron Range alleges only that it "had a reasonable expectancy of consummating a transaction involving the acquisition of Orange Line for the benefit of Iron Range." (Dkt. 1 at ¶79) This allegation is conclusory and, thus, not sufficiently particular.

Iron Range cannot allege with particularity that it had a reasonable expectation of receiving any consideration for facilitating Osprey's acquisition of Orange Line because Iron Range had no legal right to broker that transaction. Once again, Iron Range was not entitled to receive any consideration under the IBBA. 815 ILL. COMP. STAT. 307/10-60, 10-85. Accordingly, Iron Range cannot allege with particularity that it had a reasonable expectancy of receiving any compensation, so it cannot state a claim for tortious interference with prospective economic advantage.

## CONCLUSION

Iron Range has failed to state any claim on which relief can be granted. Consequently, Defendants respectfully request, pursuant to Rule 12(b)(6), that the Court enter an order granting this Motion and dismissing all counts of the Complaint with prejudice. Defendants further request any and all additional relief that the Court deems just and appropriate.

Date: April 28, 2014  Respectfully submitted,

RUBERRY, STALMACK & GARVEY, LLC

<u>/s/ Edward F. Ruberry</u>
Attorney for Defendants

Edward F. Ruberry
Alexander R. Hess
RUBERRY, STALMACK & GARVEY, LLC
500 West Madison, Suite 2300
Chicago, Illinois 60661
Phone: (312) 466-8050
Fax: (312) 488-8055
ed.ruberry@rsg-law.com
alex.hess@rsg-law.com