UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRON RANGE CAPITAL PARTNERS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14-cv-1339 |
| v. | ) |
| | ) Judge John W. Darrah |
| OSPREY CAPITAL, LLC; | ) |
| DAVID H. HOFFMAN; and | ) |
| GREGORY D. HOFFMAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Iron Range Capital Partners, LLC ("Iron Range") has brought this action, alleging Defendants, Osprey Capital, LLC ("Osprey"), Gregory Hoffman ("Gregory"), and David Hoffman ("David"), (collectively "Defendants"), defrauded Iron Range of its rights to acquire the capital stock of a third company, Orange Line Holdings, Inc. ("Orange Line"). Iron Range's seven-count Complaint asserts the following: violations of the Securities Exchange Act of 1934 (Count I); violations of the Illinois Securities Law of 1953 (Count II); fraud (Count III); breach of contract (Counts IV and V); unjust enrichment (Count VI); and tortious interference with prospective economic advantage (Count VII). Defendants have moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

## BACKGROUND

The following is taken from the Complaint, which is assumed to be true for purposes of deciding this Motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Iron Range is an Illinois private equity firm engaged in the business of investing in

companies for its own account. Osprey is an Illinois private equity firm with over $250 million of committed capital across a number of industries, with the primary goal of building businesses. Defendant David Hoffman is a principal, founder, and managing partner of Osprey. His son, Defendant Gregory Hoffman, is also a principal of Osprey. (Compl. ¶¶ 6-9.)

In January 2013, an investment banking brokerage firm contacted Iron Range regarding the potential acquisition by Iron Range of Orange Line, a lubricant oil distribution company. (*Id.* ¶¶ 10-13.) Iron Range conducted due diligence; and, in April 2013, Iron Range and Orange Line executed a Letter of Intent (the "Iron Range LOI"), by which Iron Range obtained the exclusive rights to acquire 100 percent of Orange Line's outstanding capital stock. (*Id.* ¶ 14.)[1]

In June 2013, Iron Range and Osprey began discussing the potential Orange Line acquisition by Osprey and executed a Non-Circumvention Agreement ("NCA"). (*Id.* ¶ 16.) The NCA provided that Osprey would not pursue a transaction with Orange Line without authorization from Iron Range. (*Id.* Exh. A.) On June 28, 2013, Iron Range and Osprey further entered into a Joint Ownership Agreement ("JOA"), pursuant to which (1) Iron Range would, *inter alia*, receive 5 percent of Orange Line stock, and (2) Osprey would receive 95 percent of Orange Line stock in exchange for providing subordinated debt and capital for the acquisition of Orange Line. (*Id.* ¶¶ 19-21.)

David subsequently informed Iron Range that Osprey required a letter of intent between Osprey and Orange Line. (*Id.* ¶ 27.) Relying on David's representations that Osprey would honor the payment terms in the JOA, Iron Range obtained a new Letter of Intent (the "Osprey LOI") from Orange Line, giving exclusive rights to Osprey and voiding the previous arrangement between Orange Line and Iron Range. (*Id.* ¶¶ 28-30.) However, after obtaining the

---

[1] The original Iron Range LOI expired in July 2013; and Iron Range negotiated a new LOI that extended its exclusivity period to August 30, 2013. (*Id.* ¶ 25.)

2

Osprey LOI on July 22, 2013, Defendants reversed course, excluded Iron Range from participating in the Orange Line transaction. Defendants eventually closed on the transaction in October 2013, in secret, without Iron Range's knowledge or consent. (*Id.* ¶¶ 33-48.) Defendants also refused to issue Orange Line securities, or provide other consideration, to Iron Range, as required by the JOA. (*Id.* ¶ 49.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When ruling on a motion to dismiss, the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Tamayo*, 536 F.3d at 1081.

## ANALYSIS

### *Count I - Plaintiff's Federal Securities Claim*

In Count I, Iron Range alleges that Defendants violated Section 10(b) and Rule 10b-5 of the federal securities laws because Defendants misrepresented their intentions to issue to Iron Range a 5-percent interest in Orange Line. Defendants argue that Iron Range has failed to state a

3

claim in Count I because Iron Range did not purchase or sell any securities. Furthermore, Defendants argue that Iron Range has not alleged that Defendants made any misrepresentations related to the value of the 5-percent interest in Orange Line.

Section 10(b) prohibits the use "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j. Pursuant to Section 10(b), the SEC adopted Rule 10b-5, which similarly prohibits "fraud or deceit upon any person, in connection with the purchase or sale of any security." SEC Rule, 17 C.F.R. § 240.10b-5. "The purpose of 10(b) is to create a remedy for a plaintiff induced by misrepresentations or omissions to buy or sell stock." *Rabin v. JPMorgan Chase Bank, N.A.*, No. 06 C 5452, 2007 WL 2295795, at *4 (N.D. Ill. Aug. 3, 2007) (citing *Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 534 (7th Cir. 1998) (federal securities laws provide a remedy for plaintiffs induced by "a misrepresentation or a misleading omissions to buy or sell a stock.")).

Not every alleged fraud that touches upon a security gives rise to a private remedy under Section 10(b) and Rule 10b-5. *See Gavin v. AT&T Corp.*, 464 F.3d 634, 639 (7th Cir. 2006) ("[A] mere 'but for' cause linking a securities transaction . . . to a subsequent injury . . . does not make the injury one suffered 'in connection with the purchase or sale of securities.'"). Rather, plaintiffs "injured by fraud may recover under federal securities laws only if the deceit caused them to purchase or sell securities." *Anderson v. Aon Corp.*, 614 F.33d 361, 363 (7th Cir. 2010) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)). However, neither the SEC nor the Supreme Court "has ever held that there must be a misrepresentation about the value of a particular security in order to run afoul of the Act." *SEC v. Zandford*, 535 U.S. 813, 820

4

(2002). It is also true that options to purchase stock are a security. *See The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588 (2001).

Iron Range has satisfied the "in connection with the purchase or sale of any security" requirement of Section 10(b) and Rule 10b-5. *See Anderson*, 614 F.33d at 363. Iron Range alleges that it was fraudulently induced to transfer to Osprey its exclusive right to acquire 100 percent of the outstanding capital stock of Orange Line. Stated another way, Iron Range is claiming that it was fraudulently induced to transfer their option to purchase Orange Lines' outstanding capital stock. Iron Range also alleges that, as payment for services and for the transfer of their option, they were promised 5 percent of the securities issued to Osprey. In essence, Iron Range agreed to sell their option to purchase 100 percent of stock in Orange Line to Osprey in exchange for the option to receive 5-percent of stock and other considerations, pending Osprey's successful purchase of Orange Line.

Iron Range also argues that a breach of a promise to sell securities can violate Rule 10b-5, citing, among others, the Supreme Court decisions in *Zandford* and *Wharf*. In *Zandford*, 535 U.S. at 815-16, the respondent broker allegedly sold his customers' securities without their knowledge and made personal use of the proceeds. The Supreme Court held that this conduct satisfied the "in connection with" securities sales under Section 10(b). *Id.* at 825. Likewise, in *Wharf*, 532 U.S. at 593, the Supreme Court held that the stock option sold by the defendant to the plaintiff qualified as a security so as to satisfy the "in connection with" requirement of Rule 10b-5. Iron Range claims that Osprey "sold it a security (the option) while secretly intending from the very beginning not to honor the option." *Wharf*, 532 U.S. at 597.

In *Gavin*, the Seventh Circuit held that no securities fraud occurred when MediaOne shareholders voted for a merger with AT&T and the stockholders were given the ability to

exchange their MediaOne shares for AT&T shares. *Gavin*, 464 F.3d at 637. The fraud alleged was that AT&T's attorneys sent a letter that did not inform shareholders they had the option to exchange their shares for free. *Id.* at 637-38. The Seventh Circuit commented that the situation would be different had shareholders been induced by fraudulent representation to vote for the merger and, as a result, ended up with stock worth less than what they had exchanged. *See Gavin*, at 463 F.3d at 638. That hypothetical is similar to the facts in this case. Iron Range alleges that they were fraudulently induced to transfer their option to Osprey, which is analogous to voting for a merger. In return, they did not receive the stock for which they bargained.

However, Defendants also argue that because the JOA provided that Iron Range receive one seat on Orange Line's board of directors, the 5-percent interest in Orange Line did not constitute a "security." This is because the concept of a security is based on the theory that the person purchasing a security "expects to receive profits solely from the efforts of others." *Doherty v. Kahn*, 682 N.E.2d 163, 169-70 (Ill. App. Ct. 1997). However, "the Supreme Court has repeatedly emphasized that economic reality is to govern over form and that the definitions of the various types of securities should not hinge on exact and literal tests." *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir. 1981). The Fifth Circuit held that a joint venture may still be a security if the investor can demonstrate:

> (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Id.* at 424. That Iron Range would receive one seat on Orange Line's board of directors does not necessarily establish that they would have exercised any meaningful control over Orange Line. However, that is not a proper inquiry for purposes of deciding the pending motion.

Iron Range has sufficiently alleged fraud involving the purchase or sale of a security. Defendants' Motion to Dismiss Count I is denied.

*Count II - Plaintiff's State-Law Securities Claim*

In Count II, Iron Range alleges that Defendants violated Section 12 of the Illinois Securities Law of 1953. Defendants admit in their Motion to Dismiss and Reply that the parties agree that Section 12 of the Illinois Securities Law of 1953 applies in the same way as Section 10(b) and Rule 10b-5. *See Goldberg v. 401 North Wabash Venture LLC*, 904 F. Supp. 2d 820, 849 (N.D. Ill. 2012). Because the Court has determined that Iron Range has properly alleged fraud involving a security under federal law, they have alleged the same under Illinois law. Defendants' motion to dismiss Count II is denied.

*Count III - Plaintiff's Fraud Claim*

In Count III, Iron Range alleges that David's representations regarding the necessity of executing the Osprey LOI and confirming that Osprey would honor the payment terms of the JOA, fraudulently caused them to forego their option to acquire 100 percent of Orange Line's capital stock. Under Illinois law, a party must plead several factors with specificity to state a cause of action for fraud:

> (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.

7

*Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 905 (Ill. 1996). Defendants claim that Plaintiff has not alleged with particularity how its reliance on David's representations led to its injury. Iron Range has pled with particularity how its reliance on Defendants' statements caused it to discontinue discussions with third parties to acquire Orange Line, released its exclusive right to acquire Orange Line, and that the damages exceed $1,800,000. (Compl., ¶¶ 22, 29-30, 42, 43, 56). Defendants further claim that the Iron Range LOI and the terms of the NCA and JOA conflict and that they could not have transferred 5 percent of the stock to Iron Range if Iron Range had exclusive rights to 100 percent of the stock. However, Iron Range alleges that Defendants' representation causing Iron Range to issue the Osprey LOI was false and that Osprey could have secured financing without Iron Range relinquishing its rights to Orange Line. (Compl. ¶ 31). Thus, Iron Range alleges that it could have performed under both the Iron Range LOI and received consideration under the JOA.

Defendants also claim that the NCA and JOA are invalid because Iron Range acted as a business broker. Under the Illinois Business Brokers Act ("IBBA"), 815 ILL. COMP. STAT. 307/10-1 *et seq.*, any contract for business brokering is void if it is not "in writing and signed by all contracting parties." 815 ILL. COMP. STAT. 307/10-35. Further, the IBBA requires that "[e]very person engage in the business of Business brokering shall be registered with the Office of the Secretary of State." 815 ILL. COMP. STAT. 307/10-10. If a business broker is not registered, then they "shall not … [e]ngage in the business of acting as a Business Broker without registration under this Act." 815 ILL. COMP. STAT. 307/10-85. Defendants argue that since Iron Range was not registered as a business broker, and the JOA and NCA were not in writing and signed, those agreements were void and could not be relied upon by Iron Range. However, the IBBA also states that transactions involving securities are not subject to the IBBA.

8

*See Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶¶ 48, 52; 815 ILL. COMP. STAT. 307/10-5.15. As previously discussed, the transaction involves securities; therefore, it is not subject to the IBBA. Because the IBBA does not apply, Iron Range has properly alleged that it had a right to rely on David's representations. Defendants' Motion to Dismiss Count III is denied.

*Count IV - Plaintiff's Claim Against Osprey for Breach of the Non-Circumvention Agreement*

In Count IV, Iron Range alleges that the Defendants intentionally breached the NCA by excluding Iron Range from the Orange Line transaction and closing on the Orange Line transaction without the authorization of Orange Line.

The essential elements of a breach-of-contract claim in Illinois are: "(i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) resultant injury to the plaintiff." *Coghlan v. Beck*, 984 N.E.2d 132, 143 (Ill. App. Ct. 2013). Defendants claim that Iron Range has failed to state a claim for breach of the NCA as the agreement was invalid under the IBBA. As explained above, the IBBA does not apply; and Defendants' Motion to Dismiss Count IV is denied.

*Count V - Plaintiff's Claim Against Osprey for Breach of the Joint Ownership Agreement*

In Count V, Iron Range alleges that Defendants intentionally breached the JOA by failing to give Iron Range the consideration outlined within it. Defendants claim that Iron Range has failed to state a claim for breach of the JOA as the agreement was invalid under the IBBA. As previously discussed, the IBBA does not apply.

Defendants also claim that the JOA was unenforceable, because a contract requires that "the promises and performances to be rendered by each party are reasonably certain." *Academy Chi. Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991). A contract does not exist if the

9

essential terms are so uncertain there is no way of deciding whether the agreement has been kept or broken. *Id.* at 984. Defendants claim that no contract exists because Iron Range's performance is uncertain. Iron Range may present evidence of their contemplated performance that is outside the four corners of the e-mail if the written agreement is an incomplete expression of the parties' intent. *See Chen v. Wang*, 1996 WL 732517, *5 (N.D. Ill. Dec. 17, 1996).

Essentially, Defendants' Motion to Dismiss Count V is based on the theory that the JOA e-mail represents a total integration. *See Id.* However, that has not been established by the pleading, and Iron Range has not pled that any other terms were meant to be part of the JOA. There is no date for the transaction to take place; the JOA lacks specific values for expenses and costs; and, as Defendants point out, there was no mention of what performance was required by Iron Range. The exclusion of these factors may be reasonably explained because the JOA was not a fully integrated agreement. *See J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 642 N.E. 2d 1215, 1220-21 (Ill. 1994). Defendants are correct that the JOA, as pled, is unenforceable. Therefore, Defendants' Motion to Dismiss Count V is granted without prejudice.

*Count VI - Plaintiff's Unjust Enrichment Claim*

In Count VI, Iron Range alleges that, in the alternative, Defendants unjustly enriched themselves by fraudulently inducing Iron Range to transfer their option to acquire 100 percent of Orange Line's capital stock and withholding any benefit from Iron Range. Defendants restate their argument that the IBBA applies. Specifically, Defendants claim that Plaintiff had no right to receive compensation because neither Iron Range nor Gary Starks was registered as a business broker. Again, the IBBA does not apply, and this argument does not foreclose Iron Range's unjust enrichment claim.

Defendants also claim that Iron Range's unjust enrichment claim must fail because the parties' relationship was governed by contract and the Complaint incorporates the breach of contract counts. Claims of unjust enrichment may not be brought when two parties' relationship is governed by contract. *Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.2d 683, 688-89 (7th Cir. 2004). Under the doctrine of pleading in the alternative, "a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for *quasi*-contractual relief in the alternative." *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).

Under Illinois law, an unjust enrichment claim cannot survive where that claim expressly incorporates earlier allegations as to the existence of a contract. *Vanco US, LLC v. Brink's, Inc.*, 2010 WL 5365373, *7 (N.D. Ill. Dec. 14, 2010); *see also Team Impressions, Inc. v. Chromas Technologies Canada, Inc.*, 2003 WL 355647, *4 (N.D. Ill. Feb. 18, 2003). To the extent that Count VI alleges unjust enrichment based on fraud and tortious interference, the Motion to Dismiss Count VI is denied.

*Count VII - Plaintiff's Tortious Interference Claim*

In Count VII, Iron Range alleges that Defendants tortiously interfered with Iron Range's acquisition of Orange Line. To state a cause of action for intentional interference with prospective economic advantage under Illinois law, a plaintiff must allege: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). "The tort of intentional interference with prospective economic advantage requires some conduct

11

'directed toward a third party through which defendants purposely cause that third party not to enter into or continue' a relationship with the plaintiff." *Hackman v. Dickerson Realtors, Inc.*, 557 F. Supp. 2d 938, 949 (N.D. Ill. 2008) (quoting *McIntosh v. Magna Systems, Inc.*, 539 F.Supp. 1185, 1193 (N.D. Ill. 1982)).

Defendants restate their argument that the IBBA applies because Iron Range had no reasonable expectation of receiving any consideration. As previously stated, that argument is inapposite as the IBBA does not apply.

Defendants are correct that Iron Range has not alleged any conduct directed towards Orange Line that caused Orange Line to discontinue their relationship with Iron Range. Iron Range alleges that Defendants instructed the selling agent and third-party accounting firms to cut Iron Range out of the loop. (Compl. ¶¶ 39-40). The cases cited by Iron Range involve a third party being comprised of a class of potential customers, and are inapposite here. *See CardioNet, Inc. v. Lifewatch Corp.*, 2008 WL 567031, *4 (N.D. Ill. Feb 27, 2008) (targeted consumers were a prospective class of third parties for the purposes of tortious interference); *Russian Media Group, LLC v. Cable America, Inc.*, 2008 WL 360692, *5 (N.D. Ill. Feb 7, 2008) (plaintiff may allege a prospective class of third parties against whom tortious conduct was directed). Iron Range has not alleged tortious conduct towards Orange Line, and therefore has not stated a cause of action for tortious interference. Defendants' Motion to Dismiss Count VII is granted without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss [9] is granted in part and denied in part. Defendants' Motion to Dismiss Counts I, II, III, IV, and VI is denied. Defendants' Motion to Dismiss Counts V and VII is granted without prejudice. Plaintiff may file

an amended complaint as to Counts V and VII consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure within thirty days of the entry of this order.

Date:    October 7, 2014                                      
JOHN W. DARRAH
United States District Court Judge